UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| TAMARA BELL, | ) |
| --- | --- |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:17-CV-792 JD |
| | ) |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

On October 24, 2017, Plaintiff Tamara Bell filed a complaint in this Court seeking review of the final decision of the Defendant Commissioner of Social Security denying her application for social security disability benefits [DE 1]. The matter is briefed and ripe for decision [DE 15; DE 16]. For the reasons stated below, the Court remands this matter to the Commissioner for further proceedings.

## I.  FACTS

Bell filed an application for supplemental security income on April 4, 2014, alleging a disability onset date of May 19, 2013—when Bell started experiencing chest pain, shortness of breath, and fatigue. Bell contends that she is unable to work primarily because she suffers from a heart condition, sleep disorder, obesity, bilateral knee osteoarthritis, and depression/anxiety.

More specifically, on June 19, 2013, an echocardiogram revealed that Bell suffered from severe asymmetric left ventricular hypertrophy (Tr. 375-77). Thereafter, Bell continued to complain of chest discomfort, shortness of breath, and fatigue. Further diagnostics confirmed that she was suffering from hypertrophic obstructive cardiomyopathy (Tr. 102-03).

On August 30, 2013, Bell presented with complaints of insomnia that had been ongoing for about one month, and she was also experiencing anxiety, apneic episodes, daytime somnolence, fatigue, lethargy, nightmares, nocturia, and snoring (Tr. 472). Bell was prescribed amitriptyline to help her sleep (Tr. 474). At a follow-up appointment in January 2014, Bell had some mild improvement in her insomnia with the change in her cardiac medication, but it was suspected that she suffered from sleep apnea (Tr. 444). Bell completed a sleep study on March 25, 2014, which resulted in a "markedly abnormal polysomnography study" consistent with obstructive sleep apnea-hypopnea syndrome (Tr. 322). On April 23, 2014, a CPAP machine was ordered for her sleep apnea (Tr. 568).

In 2014, Bell reported experiencing bilateral knee problems (Tr. 515). Bell underwent cortisone injections but continued to suffer from knee pain. In November 2014, she underwent a total knee arthroplasty on the right side (Tr. 704). Despite this, in January 2015, she had to undergo a right knee manipulation while under anesthesia (Tr. 700). In May 2015, Bell underwent a total knee arthroplasty on the left side (Tr. 688). Following these procedures, Bell was reportedly "doing well" (Tr. 689), but her subsequent medical records documented her as having a "lack of endurance when walking (knee pain)." (Tr. 724-61).

In 2014, Bell began seeing a mental health therapist for ongoing depression (despite already taking an antidepressant) (Tr. 673-78). Bell reported being irritable, lacking energy, and suffering from memory issues. She also complained about her knee pain and heart obstruction, which required her to be careful with exercise. Bell attended therapy to work on her mood and anxiety with respect to weight loss.

Despite this medical history, Bell's application was denied initially in June 2014, and on reconsideration in September 2014. On January 5, 2017, Bell and a vocational expert ("VE")

testified during a hearing held before Administrative Law Judge Michelle Whetsel ("ALJ"). Bell explained that her daily activities varied based on how well she slept the night before. Bell testified that she is active in the morning but must nap every afternoon due to being short of breath and experiencing fatigue. Bell can only perform housework for about half an hour before she must sit down and rest for fifteen minutes. And although Bell estimated that she could lift twenty-five pounds, she could do so only a few times because repetitive arm movements wore her out quickly. Bell indicated that she could not squat or take baths because she could not fully bend her knees. In fact, she still experiences some knee pain. Bell testified that her most recent extensive cardiac testing in Indianapolis revealed that she must have heart surgery to fix a faulty valve, otherwise the specialist warned her that she could suddenly die from heart failure. As for her mental health, Bell explained that despite taking an antidepressant, she needed therapy to help with her depression and anger; however, Bell was without sufficient insurance to continue such treatment.

The VE's testimony was based strictly on the (relevant) hypothetical posed to him, which offered an assigned residual functional capacity ("RFC")[1] of light work, limited by occasional balancing, stooping, kneeling, crouching, crawling, and climbing of ramps and stairs, no climbing of ladders, ropes, or scaffolds, and avoidance of concentrated exposure to extreme cold, extreme heat, humidity, fumes, gases, dusts, odors, and poor ventilation. Per the VE, with this RFC, Bell was able to perform her past work as a security guard, both as actually and generally performed.

---

[1] Residual Functional Capacity is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. § 404.1545.

The ALJ issued a decision on February 10, 2017, denying Bell disability benefits and concluding that Bell was not disabled under the Social Security Act because she was able to perform her past work. The Appeals Council then denied Bell's request for review which made the ALJ's decision the final determination of the Commissioner. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). Bell seeks review of the Commissioner's decision, thereby invoking this Court's jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. STANDARD OF REVIEW

This Court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

In this substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to the ALJ's findings. *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). Consequently, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539. Ultimately,

while the ALJ is not required to address every piece of evidence or testimony presented, the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

## III.  DISCUSSION

Disability and supplemental insurance benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step sequential evaluation process to be used in determining whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4)(i)-(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the community.

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, disability is acknowledged by the Commissioner. 20 C.F.R. § 404.1520(a)(4)(iii). However, if a listing is not met or equaled, then in between steps three and four, the ALJ must assess the claimant's RFC, which, in

5

turn, is used to determine whether the claimant can perform her past work under step four and whether the claimant can perform other work in society at step five of the analysis. 20 C.F.R. § 404.1520(e). The claimant has the initial burden of proof in steps one through four, while the burden shifts to the Commissioner in step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). A step five analysis was not conducted by the ALJ in this case since the ALJ believed that Bell could perform her past work.

Bell argues that the ALJ erred because the RFC assessment is not supported by substantial evidence, especially where the ALJ did not properly evaluate Bell's limitations caused by her heart condition. Bell also argues that even if she was not disabled as of the time of the ALJ's decision, then the ALJ erred by failing to consider whether Bell was entitled to at least a closed period of benefits based on her bilateral knee impairment.

The Court agrees with Bell that the RFC determination was not supported by substantial evidence, and that this error requires remand (but not an award of benefits, as requested). After addressing that argument, the Court briefly addresses Bell's remaining contention concerning a closed period of benefits, which the parties can address in more depth on remand.

## IV.  ANALYSIS

### A. Residual Functional Capacity

In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the record, including testimony by the claimant, as well as evidence regarding limitations that are not severe. *Murphy v. Colvin,* 759 F.3d 811, 817 (7th Cir. 2014) (citation omitted). An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to her findings. *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003); *Zurawski*, 245 F.3d at

888. Nevertheless, an ALJ need not provide a written evaluation of every piece of testimony and evidence. *Golembiewski*, 322 F.3d at 917. Instead, an ALJ need only minimally articulate her justification for accepting or rejecting specific evidence of disability. *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008); *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004).

The ALJ in this case concluded that Bell had the RFC to perform light work, which is defined as lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. 20 C.F.R. § 404.1567(b); SSR 83-10. A job may also be considered light work if it requires standing or walking, off and on, for a total of approximately six hours of an eight-hour workday, with intermittent sitting; or, if it involves sitting most of the time with some pushing and pulling of arm or leg controls. *Id.*; *Haynes v. Barnhart*, 416 F.3d 621, 627 n. 1 (7th Cir. 2005). The VE testified that Bell's work as a security guard (which included clerical and janitorial duties, as well) was considered light work; and so, the ALJ believed that Bell could still perform that job.

After examining the record, the Court finds that the ALJ's RFC determination was not fully grounded in Bell's medical evidence or her testimony. Bell testified that she was only able to perform work for thirty minutes before she must sit down and rest for fifteen minutes. She further testified that she must rest for several hours every afternoon. The only doctors who conducted a functional assessment, which includes a function-by-function assessment of Bell's capability to perform work, were state agent reviewers who opined that Bell could only stand and walk for two to four hours in a workday (Tr. 107-28). Thus, no doctor opined that Bell was capable of standing and walking for a total of approximately six hours. Despite this, the ALJ concluded that Bell could perform "the full amount of standing and walking necessary" for light work (Tr. 20). In drawing this conclusion, the ALJ accorded only "some weight" to the state

7

agent opinions because the ALJ believed that Bell "is without difficulty regarding ambulation." *Id*. However, no medical opinion was cited by the ALJ to support her conclusion in this respect. *Id*. Instead, the ALJ erroneously substituted her own knowledge for that of any trained physician or medical staff. *See Myles v. Astrue*, 582 F.3d 672, 677-78 (7th Cir. 2009). Put another way, the ALJ improperly "played doctor" and supplanted medical opinions (indicating that Bell could not stand/walk for six hours) with her own lay opinion. *See Suide v. Astrue*, 371 F. App'x 684, 690 (7th Cir. 2010) (The ALJ may not "play doctor" by using her own lay opinions to fill evidentiary gaps in the record.).

Moreover, the only examining consultative physician provided significant evidence that cuts against the RFC conclusion reached by the ALJ, including the ALJ's belief that Bell "is without difficulty regarding ambulation." In June 2014, Bell's physical examination revealed that she had "shortness of breath on exertion" and "dizziness, generalized weakness and poor balance." (Tr. 605-12). It was documented that Bell also presented with: "pain and tenderness to [her] bilateral knees with decreased range [of] motion noted . . . [and] [t]here is not a full range of motion in all lower extremities, due to chronic, bilateral knee pain." The examination also showed that while Bell had a normal gait, she was "in pain" and only able to stoop, squat, heel-to-toe walk and tandemly walk "with difficulty." She also stood from a seated position "with difficulty." Other medical records from late 2015 corroborated Bell's lacking endurance and experiencing knee pain while walking.

Despite this evidence, the ALJ never discussed how these records indicate that Bell's ability to perform some work and relevant tasks, including ambulating, was limited by pain and difficulty. In fact, the ALJ blatantly mischaracterized the consultative exam results by stating that it showed how Bell "retained a full range of motion and motor strength in her upper and

8

lower extremities," (Tr. 20); when in fact, the exam demonstrated that Bell suffered from a decreased range of motion in her lower extremities due to pain. Based on the ALJ's mischaracterizing and omitting discussion of evidence favoring Bell, it is clear that the ALJ's assessment of Bell's RFC is not supported by substantial evidence or an adequate discussion of the actual evidence.

The Court would further note that each of the state agent opinions (both reviewers and examiners alike) were provided *before* Bell ever had both of her knees replaced and medical records documented Bell's ongoing problems. And although the ALJ was entitled to rely on post-surgical treatment notes indicating that Bell was "doing well," the ALJ was not permitted to ignore subsequent medical records which repeatedly documented Bell as continuing to experience knee pain. *See Staggs v. Astrue*, 781 F.Supp.2d 790, 794–96 (S.D. Ind. 2011) (finding that the medical record omitted from review provided "significant substantive evidence" regarding the claimant's medical impairments and that any medical opinion rendered without taking this record into consideration was "incomplete and ineffective."). Because evidence existed which indicated that Bell's pain was not resolved and that she continued to suffer from limitations after her knee surgeries, it was the ALJ's responsibility to recognize the need for further medical evaluations of Bell's condition before making her RFC assessment. *See, e.g., Smith v. Apfel*, 231 F.3d 433, 437-38 (7th Cir. 2000).

Additional serious flaws with respect to the ALJ's RFC determination also require correction on remand. In discussing Bell's cardiovascular disorder, sleep disorder, and obesity, the ALJ felt that Bell was not as limited as Bell contended because she was "without any invasive treatment, even minimal inpatient hospitalizations, or documented daytime somnolence." (Tr. 20). Yet, Bell's records explicitly documented daytime somnolence (*e.g.*, Tr.

9

472) and Bell testified that she must immediately undergo heart surgery or risk death (per a specialist). Also, remarkable, is the fact that the ALJ *never once* mentioned that Bell suffered from some mental health issues (even if seemingly non-severe). However, the record reflects that Bell was continually taking an antidepressant and she stated a need for ongoing mental health therapy to help her cope. The ALJ's exclusion of this line of significant evidence supporting Bell's claim for disability fails to demonstrate that the ALJ considered the full extent of Bell's problems and their limiting effects. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). While the Court realizes that an ALJ need not discuss every piece of evidence in the record in rendering a decision, the ALJ cannot "cherry-pick" facts that support a finding of non-disability while ignoring evidence that points to a disability finding. *See id.* Because the ALJ's assessment of Bell's RFC is not supported by substantial evidence, the determination cannot stand.[2] 42 U.S.C. § 405(g); SSR 96–8p.

**B. Closed Period of Disability**

Bell argues that the ALJ should have at least awarded a closed period of disability benefits due to her bilateral knee problems. Bell believes that the ALJ erred by failing to adequately explain why she was not disabled for at least a twelve-month period.

While it is true that the ALJ did not separately explain the basis for concluding that Bell was not disabled for the twelve months surrounding her knee replacements, there was no reason to do so. Here, the ALJ's discussion of the evidence from that period makes evident her

---

[2] Here, the ALJ's insufficiently supported RFC findings led the ALJ to ask hypotheticals of the VE which omitted Bell's claimed (and potentially credible) limitations. Ultimately, the VE's testimony cannot be relied upon as an accurate indicator for the type of work that Bell can perform, and so the step four conclusion cannot be affirmed. *See Young v. Barnhart*, 362 F.3d 995, 1003-05 (7th Cir. 2004) (the ALJ must determine the claimant's RFC before performing steps four and five because a flawed RFC typically skews questions posed to the VE); SSR 96-8p.

conclusion that she deemed Bell capable of returning to light work. *See Reed v. Colvin*, 656 F. App'x 781, 788 (7th Cir. 2016) (holding that the ALJ need not have separately explained why the claimant was not disabled for at least twelve months, as the decision explained how the evidence over the relevant period supported the RFC finding). However, as previously discussed, whether Bell could return to any work (even at a sedentary level), is dependent on the RFC assessment—which the ALJ failed to adequately assess. Accordingly, on remand, if the ALJ should find that Bell is not disabled, it would be helpful for the decision to also acknowledge and address Bell's request for a closed period of benefits, particularly if the decision relies at least in part on Bell's improvement over time, as does the present decision.

## V. CONCLUSION

For the reasons stated above, the Court REVERSES the Commissioner's decision and REMANDS this matter to the Commissioner for further proceedings consistent with this opinion. The Clerk is DIRECTED to enter judgment accordingly.

SO ORDERED.

ENTERED: February 5, 2019

                                                /s/ JON E. DEGUILIO
                                                Judge
                                                United States District Court